IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JO ANN SCOTT,                                )
                                             )
                    Plaintiff,               )
                                             )        CIVIL ACTION
v.                                           )
                                             )        No. 16-1087-JWL
NANCY W. BERRYHILL,[1]                       )
Acting Commissioner of Social Security,      )
                                             )
                    Defendant.               )
_____    )

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security

(hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections

216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the

Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court

ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C.

§ 405(g) AFFIRMING that decision.

I.      Background

_____

[1]On Jan. 20, 2017, Nancy A. Berryhill, became Acting Commissioner of Social
Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure,
Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the
defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action
is necessary.

Plaintiff applied for DIB, alleging disability beginning December 20, 2012.  (R. 12, 147).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  She implies that the ALJ erred at step three of his consideration, and argues that he erred in evaluating the credibility of her allegation of symptoms, and in considering the medical opinions.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  Here, the ALJ decided at step four that Plaintiff is able to perform her past relevant work as a hospital cleaner as she actually performed it.  He did not make an alternative determination at step five, and the burden never shifted.

After considering the arguments in Plaintiff's Brief, the court finds no error.  The structure of Plaintiff's Brief implies that the ALJ erred at step three of the sequential evaluation process.  She provides "Evaluation at step 3 of the Sequential Evaluation Process" as a major heading in the "Arguments and Authorities" section of her brief (Pl. Br. 3) and discusses four specific errors under that heading:  failing to apply Social Security Ruling (SSR) 12-2p correctly, id. at 3-6; failing to accord sufficient weight to the opinions of Plaintiff's treating physicians, id. at 6-9; finding Plaintiff's allegations of symptoms only partially credible, id. at 9-11; and according excessive weight to the opinion of the state agency non-examining physician.  Id. at 11.

## II.     Discussion

It is not clear what error Plaintiff is alleging at step three of the ALJ's evaluation. The question at step three is whether Plaintiff has an impairment that meets or equals the severity of an impairment listed in the Listing of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii).  But Plaintiff does not point to a listed impairment for which she

argues that the criteria are met or equaled.  The closest she comes is to assert that "the

ALJ is emphatic that all other diagnoses are excluded that could support evaluation under

other Listings."  (Pl. Br. 6) (citing R. 16).

The ALJ noted that fibromyalgia is not a listed impairment and that therefore

Plaintiff's condition cannot meet a Listing.  (R. 16) (citing SSR 12-2p).  He recognized

that under these circumstances he must consider whether Plaintiff's condition medically

equals a Listing, and explained that he had considered whether Plaintiff's condition

medically equals the musculoskeletal listings 1.02 through 1.08, and the immune system

listings, 14.02, 14.04, 14.06, and 14.09.  Id.

Medical equivalence to a listing may be established by showing that the claimant's

impairment(s) "is at least equal in severity and duration to the criteria of any listed

impairment."  20 C.F.R. § 404.1526(a).  Not only does Plaintiff fail to point to a Listing

which in her view is medically equaled, she does not suggest how her condition is equal

in severity or duration to the criteria of any Listing.  She simply does not suggest how the

ALJ erred in finding Plaintiff's condition does not meet or equal the severity of a Listing.

Rather, she seems to equate SSR 12-2p with a Listing.  She argues:

> Under SSR 12-2p (§ II.A.1-3) [(West's Soc. Sec. Reporting Serv., Rulings
> 462-63 (Supp. 2016)], a plaintiff must establish (i) a history of widespread
> pain, (ii) at least 11 trigger positive trigger [sic] points on examination and
> (iii) medical evidence to rule out other medical conditions.  Plaintiff's
> medical evidence and that obtained by the ALJ from the Consultative
> Examiner (R. at 368-371) established that plaintiff met all three
> requirements.

(Pl. Br. 6).  SSR 12-2p does not present fibromyalgia as a Listed impairment, but it

acknowledges that fibromyalgia "is not a listed impairment."  West's Soc. Sec. Reporting

Serv., Rulings 466 (Supp. 2016).  Section II of SSR 12-2p, cited by Plaintiff explains the

criteria to establish that a claimant has the medically determinable impairment of

fibromyalgia.  Id. at 461.  As the Commissioner points out in her Brief, Dr. Winkler

opined that Plaintiff has the medically determinable impairment of fibromyalgia, and that

it is severe within the meaning of the regulations.  (Comm'r Br. 4); see also (R. 447).

And, as the Commissioner also pointed out, the ALJ found that Plaintiff has the severe

impairment of fibromyalgia.  Id., see also (R. 14).  Thus, Plaintiff has not shown that the

ALJ erred in evaluating fibromyalgia pursuant to SSR 12-2p at either step two or step

three of his evaluation.

Plaintiff's arguments that the ALJ did not accord sufficient weight to the opinions

of her treating physicians, and accorded excessive weight to the opinion of the state

agency non-examining physician also fail to demonstrate error in the decision.  In arguing

that the treating source rule should apply; that the ALJ should have accorded greater

weight to the opinions of her treating physicians, Dr. Jones and Dr. Ruhlman; and that the

ALJ should not have given significant weight to the state agency non-examining

physician, Plaintiff asks the court to reweigh the medical opinions in her favor, but it

cannot do so.  Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172; see also Energy W.

Mining Co. v. Oliver, 555 F.3d 1211, 1217 (10th Cir. 2009) (On substantial evidence

review, the court "will not reweigh the evidence considered by the agency, but only

inquire into the existence of evidence in the record that a reasonable mind might accept as

adequate to support its conclusion.").

Thus, the question for the court is whether substantial record evidence supports the

ALJ's weighing of the medical source opinions.  The court's review must begin with the

findings of the ALJ in this regard, which are quoted here in their entirety:

> the undersigned gives significant weight to the opinion [ ] of the State agency physician contained in Exhibit 3A [(R. 68-79)].  This opinion is consistent with the record as a whole, particularly the detailed examination findings contained in 5F and 11F [(R. 368-74, 423-36)].  These findings are further consistent with the claimant's reported activities of daily living and limited treatment history as detailed above.  As a State agency physician, this source has unique, expert training in the evaluation of disability allegations.  However, secondary to the claimant's partially credible testimony and her allegations of chronic pain, the undersigned has included additional postural, manipulative, and environmental limitations in the above residual functional capacity.
>
> The undersigned has also considered the opinions of Dr. Wallace and Anne Winkler, M.D., both of whom opined the claimant could perform medium exertional level work with varying postural and environmental limitations (Ex. 11F; 14F [(R. 423-36, 447-68)]).  The nonexertional limitations contained in these opinions are given some weight as they are consistent with the record as a whole - particularly Dr. Wallace's detailed examination (Ex. 11F [(R. 423-36)]).  However, overall, these two opinions are given little weight, specifically with reference lo the exertional limitations, in that the claimant's partially credible subjective complaints warrant additional limitations to the light exertional level of work.
>
> Additionally, the undersigned has considered the opinions of the treating physician, Dr. Jones and treating rheumatologist, Dr. Ruhlman, that the claimant could not even perform a limited range of  sedentary level work (Ex. l0F; 13F [(R. 420-22, 444-46)]).  First, the undersigned notes that these opinions are inconsistent with the progress notes.  As detailed above, Dr. Jones' examinations have revealed no remarkable findings in the musculoskeletal system (Ex. 4F; 6F [(R. 346-67, 375-90)]).  Similarly, while Dr. Ruhlman noted that the claimant had positive trigger point

examinations on occasion, the remainder of his examination findings are unremarkable other than some vague findings of tenderness in the lumbar spine (Ex. 12F [(R. 437-43)]). Moreover, these opinions are not supported by the detailed examination findings contained in Exhibits 5F [(R. 368-74)] and 11F [(R. 423-36)]. The undersigned notes that these opinions are also not supported by the claimant's activities of daily living and minimal treatment history detailed above. Finally, the undersigned notes an internal inconsistency in Dr. Ruhlman's opinion when he notes the claimant can only work 3 hours total in a day: yet she is able to sit for 3 hours, stand for 2 hours, and walk 1 hour each in a day (Ex. 13F [(R. 444-46)]). For all of these reasons, these opinions are given no weight.

(R.19).

The ALJ provided a rationale for his evaluation of the medical opinions which is supported by citation to the record evidence and related to his analysis of the evidence. The court's review of this evidence confirms that it supports the rationale. Plaintiff's only specific objection to the ALJ's rationale is that the state agency physician who opined regarding Plaintiff's capabilities in Exhibit 3A (R. 75-77) and to whose opinion the ALJ accorded significant weight "did not have the benefit of the later medical evaluations and opinions of Drs. Jones (R. at 420) and Ruhlman (R. at 444)," and that "State Agency reviewing [(non-examining)] physicians do not possess unique or expert training, apart from private practice physicians." (Pl. Br. 11 and n.2).

Plaintiff is correct that Dr. Jones's and Dr. Ruhlman's opinions were not available to the state agency physician. But, that is unremarkable, and unnecessary. It is not the state agency physician's duty to assess Plaintiff's RFC, it is the ALJ's duty. Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x

8

875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at \*5 (July 1996)).

Because RFC assessment is made based on "all of the evidence in the record, not only the

medical evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No.

98-5167, 1999 WL 651389, at \*\*2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a).

Here, the ALJ had access to all of the record evidence and considered it in weighing the

medical opinions.  He accorded no weight to Dr. Jones's and Dr. Ruhlman's opinions and

significant weight to the state agency physician's opinion.  And, the record evidence

supports his evaluation.

    The ALJ accorded significant weight to the state agency physician's opinion

because it was consistent with the record as a whole, it was consistent with Plaintiff's

daily activities and with her limited treatment history, and because state agency

physicians have "unique, expert training in the evaluation of disability allegations."  (R.

19).  Plaintiff objects only to the fourth reason, but provides no authority to support her

assertion that state agency physicians have no more unique, expert training than do

physicians in private practice.  The court will assume without deciding that Plaintiff is

correct that state agency physicians have no more unique, expert medical training than is

available to physicians in private practice.  However, state agency physicians have no

doubt received training and instruction regarding evaluating disability applications which

is not available to physicians in private practice, and they have considerable experience

and expertise in such evaluations.  That is a proper consideration in weighing state agency

physicians' medical opinions.  In any case, the ALJ provided three other reasons

supported by the record evidence to accord the state agency physician's opinion

significant weight, and Plaintiff does not even address those reasons.

Plaintiff also argues that the ALJ erred in weighing Dr. Jones's and Dr. Ruhlman's

opinions because Dr. Winkler, the medical adviser (MA), "operated under the mistaken

belief that fibromyalgia does not include a 'psychological component,' or evidence

'somatic complaints,' or that the condition could vary from appointment to appointment,

all refuted by SSR 12-2p." and the ALJ "relied upon this mistaken MA opinion to reject

[P]laintiff's two treating physicians' opinions."  (Pl. Br. 6-7).  Both premises of Plaintiff's

argument are erroneous.  She has not shown that Dr. Winkler operated under the mistaken

beliefs alleged, or that the ALJ relied on Dr. Winkler's opinion to reject Dr. Jones's or Dr.

Ruhlman's opinion.  In the third full paragraph on page eight of his decision (R. 19), the

ALJ provided four reasons for according no weight to the treating source opinions, and in

doing so he did not even mention Dr. Winkler or her answers to the interrogatory

questions (R. 447-68).  Moreover, the ALJ had already explained that he accorded some,

but only little, weight to Dr. Winkler's opinion because Plaintiff's partially credible

subjective complaints warranted an additional limitation to light work, rather than

medium work as opined by Dr. Winkler.  (R. 19).

As Plaintiff's Brief suggests, SSR 12-2p recognizes that fibromyalgia's symptoms

can include a psychological component or somatic complaints, and may vary over time.

West's Soc. Sec. Reporting Serv., Rulings 463, 465 (Supp. 2016).  But, Dr. Winkler's

report does not reflect that she believes fibromyalgia does not include a psychological

component, somatic complaints, or variance over time.  The first question in the interrogatories presented to Dr. Winkler asked her to specify Plaintiff's medical impairments established by the medical evidence and to point to "the item or items of medical evidence establishing each such impairment."  (R. 447, question no. 1).  In response to this question, Dr. Winkler noted (among other impairments) that Plaintiff had fibromyalgia and in relation thereto that she had "varying exams," and "component of psychologic issues."  Id.  In an empty space in the answer form, without a direct link to fibromyalgia, Dr.Winkler also stated, "psychiatric issues noted."  Id.  This seems to be an acknowledgment that Plaintiff has the medically determinable impairment of fibromyalgia, and that it is established at least in part by varying examinations and psychologic or psychiatric issues.  In response to questions two and three, Dr. Winkler expressed her opinion that fibromyalgia is Plaintiff's only severe impairment.  Id.  All of this is consistent with SSR 12-2p and suggests that Dr. Winkler expressed her opinions consistent with that ruling.  Plaintiff has shown no error in the ALJ's application of SSR 12-2p in evaluating the treating source opinions.

In her argument regarding the ALJ's credibility determination, Plaintiff noted the ALJ's finding that Dr. Ruhlman's opinion contained an internal inconsistency wherein Dr. Ruhlman opined that Plaintiff could work only three hours but could sit three hours, stand two hours, and walk one hour in a day.  (Pl. Br. 10).  She argues that these opinions are confusing, not inconsistent, and that SSR 96-5p requires the ALJ to recontact the physician for clarification in such a situation.  Id.  That argument is likewise unavailing.

11

The regulations were changed more than two years before the hearing in this case, giving adjudicators greater flexibility in obtaining information necessary to make a disability determination, and they no longer require that an ALJ first recontact a treating source to resolve an inconsistency or insufficiency in the evidence that source provides to the Social Security Administration.  How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651 (Feb. 23, 2012) (effective March 26, 2012).  That Plaintiff relies upon SSR 96-05p rather than the authority upon which it is based does not require a different result.

Moreover, Plaintiff has shown no basis to recontact Dr. Ruhlman even under the standard applicable before March 26, 2012.  As Plaintiff asserts, the former regulation required a medical source to be recontacted when the report from that medical source contains a conflict or ambiguity that must be resolved, does not appear to be based on acceptable clinical and laboratory diagnostic techniques, or does not contain all of the information necessary to a decision.  20 C.F.R. §§ 404.1512(e)(1), 404.1527(c)(3) (2011).

Here, the ALJ did not suggest in any way that Dr. Ruhlman's opinion is not based on acceptable clinical and laboratory diagnostic techniques or that he omitted certain information necessary to a decision.  And Plaintiff does not point to such insufficiency.  Moreover, Plaintiff does not point out a conflict or ambiguity in Dr. Ruhlman's report requiring resolution, and the ALJ did not recognize such a deficiency in the report.  The mere fact that an ALJ discounted the opinion of a medical source because the opinion is inconsistent has never been sufficient to require that he recontact the medical source, and

it did not have that effect even under the controlling regulations when Plaintiff's case was decided.  Were it otherwise, the meticulous and somewhat cumbersome system used by the agency to make disability determinations would become virtually unworkable.  As quoted above, the ALJ explained why he discounted Dr. Ruhlman's opinion.  His reasons are supported by the record evidence, and Plaintiff has not shown otherwise.

Plaintiff bases her allegation of error in the ALJ's credibility determination upon the alleged error in applying SSR 12-2p.  (Pl. Br. 11).  But, having failed to show error in that regard, she has also failed to show error in the credibility determination.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 27th day of February 2017, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**